IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00214-RM-MDB

CLEAR SPRING PROPERTY AND CASUALTY COMPANY,

    Plaintiff,

v.

DINA MILLER

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

    Before the Court is Defendant Dina Miller's ["Defendant"] Motion to Dismiss and/or Transfer Venue to the United States District for the Southern District of Florida (["Motion"], Doc. No. 26.) Plaintiff Clear Spring Property and Casualty Company's ["Plaintiff"] has responded and Defendant has replied. (["Response"], Doc. No. 35; ["Reply"], Doc. No. 42.) For the reasons set forth below, the Court respectfully recommends that the Motion be **GRANTED** as to transfer of venue but **DENIED WITHOUT PREJUDICE** as to dismissal.

## BACKGROUND

    This civil action arises from the partial sinking of Defendant's Sea Vessel (Vessel) at a time when Plaintiff insured the Vessel under Clear Spring Policy No. CSRYP/206302. (Doc. No. 1 at ¶¶ 6-10.) The policy for marine insurance affords four hundred seventy-five thousand dollars ($475,000.00) in first-party property damage coverage for the Vessel. (*Id.* at ¶ 9.)

1

Plaintiff, the insurer, alleges that "[u]pon receipt of the first notice of the September 17, 2022 [partial sinking] incident described herein, [Plaintiff] caused an investigation to be made into the facts and circumstances surrounding the said incident." (*Id.* at ¶ 11.) Plaintiff further alleges that the "investigation established that the partial sinking was not proximately caused by a fortuitous event[,]" or "an accidental external event[,]" but rather "that the Vessel was unseaworthy at the inception of the Policy." (*Id.* at ¶¶ 12-15.) Additionally, the "investigation established that a substantial portion of the claim being submitted by [Defendant] is for damages that are not attributable to the partial sinking or which are subject to the Policy's depreciation clause." (*Id.* at ¶ 16.)

Plaintiff claims Defendant lacks coverage under the express terms of the marine insurance policy and that because Defendant made a claim notwithstanding the lack of coverage, Plaintiff is entitled to relief in the form of a judgment:

> (A) Declaring that Plaintiff's Policy No. CRYP/206302 does not afford coverage to the Defendant for the partial sinking of September 17, 2022;
> (B) Declaring that neither the incident nor the damage resulting from the incident of September 17, 2022 constitute an accidental physical loss;
> (C) Declaring that coverage for the incident of September 17, 2022 is excluded under the terms of clear and unambiguous exclusions set forth in Plaintiffs Policy No. CSRVP/206302;
> (D) Declaring that Policy No. CRYP/202273 affords no coverage for the partial sinking of September 17, 2022 due to MILLER's breach of the express and implied seaworthiness warranties.
> (E) Declaring that Policy No. CRYP/206302 only affords coverage for those costs which are not barred by the Policy's depreciation clause.
> (F) Declaring that the costs of this action be taxed against the Defendant; and
> (G) Any and all such other and further relief as the Court may deem proper and appropriate in the premises.

(*Id.* at ¶ 47.[1])

---

[1] Plaintiff's paragraphs are mis-lettered and run from A-H, skipping D.

Plaintiff filed its Complaint in January 2023, and Defendant filed the instant Motion in April 2023. (*See* Doc. Nos. 1, 26.) Defendant, the insured, moves pursuant to Fed. R. Civ. P. 12(b)(3), and 28 U.S.C. § 1404(a), seeking transfer to the Southern District of Florida. According to Defendant, the Vessel was docked, used, compromised, and repaired in Florida. (Doc. No. 26 at ¶¶ 1, 9-20.) Additionally, the Vessel was inspected by Plaintiff's agents in Florida, and the policy "is a Florida policy." (*Id.*)

Plaintiff does not seem to dispute those assertions, but argues Defendant's motivation for transfer is improper and Plaintiff's choice of forum should not be disturbed. (Doc. No. 35 at 4-8.)

Although the maritime insurance policy at issue contains a choice of law clause requiring the application of Federal Admiralty law and New York law, (Doc. No. 1 at 16), it does not appear to contain a forum selection clause.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . to any other district or division where it might have been brought." *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167-75 (10th Cir. 2010) (applying § 1404(a) to a transfer between one federal district court in the United States to another). The ultimate decision to transfer an action lies in the sole discretion of the district court and should be based on an "individualized, case-by-case consideration of convenience and fairness." *Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1182 (D. Colo. 2008) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

To determine whether transfer is appropriate under § 1404(a), courts consider a number of public- and private-interest factors. *Atl. Marine Constr. Co.*, 571 U.S. at 62-63. Private-interest factors include the plaintiff's choice of forum; the convenience of the witnesses; the accessibility

3

of witnesses and other sources of proof; the possibility of obtaining a fair trial; and all other considerations of a practical nature that make a trial easy, expeditious and economical. *Chrysler Credit Corp.*, 928 F.2d at 1516. Public-interest factors include: docket congestion; the local interest in having localized controversies decided at home; problems related to the conflict of laws; the advantage of having a local court determine questions of local law; and judicial efficiency and economy. *Texas Gulf Sulfur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir. 1967). The district court then weighs the relevant factors and decides whether, on balance, a transfer would service "the convenience of parties and witnesses" and otherwise promote "the interest of justice[.]" § 1404(a).

Generally, the "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Cohen v. Waxman*, 421 F. App'x 801, 803 (10th Cir. 2010) (quoting *Chrysler Credit Corp.*, 928 F.2d at 1515). However, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause," and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Constr. Co.*, 571 U.S. at 62.

## ANALYSIS

As an initial matter—the Court determines that transfer rather than dismissal—is the appropriate remedy. Here, "it is more efficient to begin by simply transferring the litigation to the [proper forum], rather than dismissing it and effectively requiring Plaintiff to re-file" in another forum. *Aspen Corps., Inc. v. Gorman*, No. 18-cv-01325-CMA-SKC, 2019 WL 1281211, at *3 (D. Colo. Mar. 20, 2019); *see also Lawson v. Glob. Payments Inc.*, No. 18-cv-03360-PAB-SKC, 2019 WL 4412271, at *1 (D. Colo. Sept. 16, 2019) (denying request for dismissal under Rule

12(b)(3) and instead ruling on the motion to transfer under § 1404(a)). The Court, therefore, focuses its analysis on whether transfer is appropriate in this case.

Before applying the various factors from *Chrysler Credit Corp.* and *Texas Gulf Sulfur Co.*, the Court "must determine whether a valid and enforceable forum-selection clause applies to the parties' dispute." *Parker Powersports Inc. v. Textron Specialized Vehicles Inc.*, No. 21-cv-00766-PAB-STV, 2022 WL 796788, at *2 (D. Colo. Mar. 16, 2022); *see also Lewis v. Google, Inc.*, No. 19-cv-2387-WJM-KLM, 2019 WL 10749715, at *2 (D. Colo. Dec. 31, 2019) ("The Court's analysis—whether to apply the standard § 1404(a) factors and burdens, or to apply the factors and burdens required under *Atlantic Marine*—turns on whether the Forum Selection Clause is valid."). Here, the relevant agreements do not appear to contain a forum selection clause, and the parties do not argue that one exists.

Thus, the Court turns to the multi-factor analysis under *Chrysler Credit Corp.* and *Texas Gulf Sulfur Co.* Defendant argues transfer is appropriate because the key witnesses and evidence are in Florida, and the actions and events of the case took place in Florida. (Doc. No. 26 at 2-3.) Defendant further argues there is little-to-no connection to Colorado, and even the policy itself, as well as the handling of the claim, indicate the policy at issue is a "Florida policy." (*Id.* at 7-8.) Plaintiff argues that Defendant is forum-shopping. (Doc. No. 35 at 8.) Plaintiff also argues the policy was delivered to Defendant in Colorado, where Defendant resides, and that Plaintiff's choice of forum should be afforded deference. (*Id.* at 3, 5.)

The Court first notes that Plaintiff is correct in stating that a plaintiff's choice of forum is rarely disturbed. *See Bailey v. Union Pac. R. Co.*, 364 F. Supp. 2d 1227, 1229 (D. Colo. 2005) ("Unless the balance of the inconvenience is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed."). However, a plaintiff's choice of forum is afforded

5

less weight when plaintiff or the underlying case has no meaningful connection to the forum state. *See Wood v. Houghton Mifflin Harcourt Publ'g Co.*, No. 07-cv-01516-DME-BNB, 2008 WL 2113344, at *2 (D. Colo. May 19, 2008); *Emp'rs. Mut. Cas. Co.*, 618 F.3d at 1168 (courts give little weight to the Plaintiff's choice of forum "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.") (quotation omitted).

In this lawsuit, every aspect of the case—other than the policy's delivery in Colorado—has a Florida nexus. For example:

- the claim originated in Florida;
- discovery that the Vessel was sinking was made within the Southern District of Florida;
- the Vessel was taken to a repair facility in the Southern District of Florida;
- although Defendant spends time in Colorado, she also spends time in Florida; and
- a Florida insurance agent sold Defendant's insurance policy.

(Doc. No. 26 at 2-5, Doc. No. 1 at 12.) Moreover, and as Defendant points out, the insurance policy does not appear to extend coverage to the Vessel in question if it operated in Colorado. (*Id.* at 4; Doc. No. 1 at 13.) Instead, the policy's navigational limits state that coverage "is confined to a single trip from Virginia to Florida and thereafter confined to Florida and the Bahamas – not to exceed 50 miles offshore." (Doc. No. 1 at 13.)

Plaintiff counters that only "some, but not all," witnesses are in Florida, (Doc. No. 35 at 6.) Plaintiff also argues that depositions, including by Zoom, are the norm post-pandemic, and that the "convenience of witnesses does not justify transfer unless the moving party can show 'that any such witnesses [are] unwilling to come to trial, that deposition testimony would be

unsatisfactory, or that the use of compulsory process would be necessary.'" (*Id.* at 6 (citing *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169)). The Court will address each of these arguments in turn.

      First, although Plaintiff argues that not all witnesses are in Florida, it does not identify any specific witnesses, their locations, or elaborate on other details. Second, while it is true that technology has come a long way and the barriers posed by distance are now easier to overcome, much of what we do in litigation still requires in-person contact. *See Hardy v. Flood*, No. 17-cv-00677-CMA-NRN, 2019 WL 2076563, *3 (D. Colo. May 10, 2019) ("[T]he importance of presenting live testimony cannot be forgotten.") (citation omitted); *Wolfkiel v. King*, No. 11-cv-3170-JLK-KLM, 2012 WL 3245962, at *3 (D. Colo. Aug. 7, 2012) (in granting motion to transfer, finding that "deposition or other recorded testimony is always 'second-best' to hearing from witnesses in person"). For example, non-verbal cues often assist lawyers, juries, and judges in assessing witness credibility; and while photos and videos are helpful in inspecting a product, it is not the same as having a lawyer and/or an expert inspect the product in-person with the benefit of all senses. In this case, the property at issue—the Vessel—is in Florida. (Doc. No. 26 at 3.) Additionally, the witnesses who conducted repairs on the Vessel are in Florida. (*Id.* at 2.) The claims adjuster and other agents of Plaintiff involved in the claim investigation are in Florida. (*Id.* at 3.) And two eyewitnesses, including the property owner who saw the Vessel as it was sinking, and a person who saw the Vessel on the dock passing by, also either reside or spend time in Florida. (*Id.* at 3, 5.) It would be far more practical, convenient, economical, and efficient if the litigation were also in Florida. *See Chrysler Credit Corp.*, 928 F.2d at 1516; *Texas Gulf Sulfur Co.,* 371 F.2d at 147.

As to Plaintiff's concern about mere convenience in the absence of showing a true "need," Plaintiff is correct that "merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." *Emp'rs. Mut. Cas. Co.*, 618 F.3d at 1167 (quotation omitted). But here, a transfer to the Southern District of Florida does not merely shift inconvenience from one side to the other. A transfer would eliminate inconvenience for *both* Defendant *and* Plaintiff. In fact, Plaintiff admits that litigating in Florida would allow it to shed the extra expense of local counsel. (Doc. No. 35 at 6.) Plaintiff also admits that its counsel's firm, The Goldman Maritime Law Group, are members of the Florida Bar, and have an office in the Southern District of Florida. (*Id.*)

Convenience is the most important factor in the analysis. *See Emp'rs. Mut. Cas. Co.*, 618 F.3d at 1153. And here, that factor weighs heavily in favor of transfer. *See generally Gates Corp. v. Twin City Die Castings Co.*, No. 12-cv-01248-CMA-CBS, 2012 WL 4748046, at *7 (D. Colo. Sept. 11, 2012), *report and recommendation adopted*, 2012 WL 4742153 (D. Colo. Oct. 3, 2012) (citing *Amazon.com v. Cendent Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (in considering the convenience factor, "the Court may look at the sheer weight of the numbers" and "should consider not only how many witnesses each side may have but also the relative importance of their testimony"). *Cf. Kreinberg v. Dow Chemical Co.*, 496 F. Supp. 2d 329, 331 (S.D.N.Y. 2007) (transferring venue after finding that most of the operative events at issue took place in the transferee venue and concluding that "it is likely that most of the witnesses and documents are located there"); *United States ex rel. Ondis v. City of Woonsocket, Rhode Island*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) (in *sua sponte* transferring the case to the District of Rhode Island, the court noted that virtually all of the operative events occurred in Rhode Island, all of the named defendants resided and worked in Rhode Island, and other named witnesses

have direct connections to the transferee venue); *In re Collins & Aikman Corp. Securities Litigation*, 438 F. Supp. 2d 392, 395-397 (S.D.N.Y. 2006) (transfer motion granted where numerous party and non-party witnesses resided in the transferee forum, most relevant documents were located in the transferee forum, and the transferee forum is where the subject misrepresentations alleged were issued or originated). In this case, the ties to Florida outweigh any connection this litigation may have to Colorado.

The analysis does not end there, however. Plaintiff argues that a unique Florida statute "might allow a court in Florida to award automatic attorney's fees . . . ." (Doc. No. 35 at 1.) Plaintiff's reasoning is difficult to follow, but it appears to be that *if* the choice of law clause is rendered unenforceable or inapplicable under a recent First Circuit decision, *and* Florida's automatic attorneys' fees statute applies, Plaintiff would be at a disadvantage. (Doc. No. 35 at 5, 7-8.) Arguably, this concern goes to the factor that weighs the "advantages and obstacles to a fair trial." *Chrysler Credit Corp.*, 928 F.2d at 1516 (quotation omitted). But the Court gives this argument relatively little weight for several reasons. First, as Plaintiff concedes, Florida's fee-shifting statute was repealed effective March 24, 2023, and thus is likely to be found inapplicable to this action. (Doc. No. 35 at 7.) *See* H.B. 837, 2023 Leg. (Fl. 2023) ("Section 627.428, Florida Statutes, is repealed."). Second, the fee-shifting statute does not impact the merits of the case or the fairness of a trial. Third, Plaintiff's own arguments demonstrate that fee-shifting is merely a *possibility* if this case is transferred, whereas the convenience issues described above are a *certainty* if the case is not transferred.

As to the remaining factors, many of them do not apply to this case. However, those that do also favor transfer. For example, Florida courts have an interest in deciding localized controversies at home, and this case concerns a Vessel located in Miami-Dade County, Florida.

9

(Doc. No. 26 at 2.) Also, the policy in question is likely one of many marine insurance policies Plaintiff and other insurers have issued for vessels in Florida. Florida courts have an interest in adjudicating these types of disputes for purposes of consistency, and Florida courts will certainly have more experience with maritime insurance disputes than this Court in landlocked Colorado.

In short, this is not a case where a transfer may result in a slightly more convenient forum. Defendant has demonstrated that the balance of convenience and justice weighs heavily in favor of transfer. The goal of the transfer statute is to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience. *Albright v. Terraform Labs, Pte. Ltd.*, 642 F. Supp. 3d 48, 55 (S.D.N.Y. 2022). That goal is served with a transfer in this case. *See Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 385 (W.D.N.Y. 2018) (also concerning a boat and an insurance policy, and the court decided to transfer the case from the Western District of New York to the Southern District of Florida).

## CONCLUSION

For the foregoing reasons, the Court recommends:

(1) Plaintiff's request for transfer under 28 U.S.C. § 1404(a) be **GRANTED;**

(2) Plaintiff's request for dismissal under Fed. R. Civ. P. 12(b)(3) be **DENIED WITHOUT PREJUDICE.**

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general

objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see*, *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

       Dated October 4, 2023.

                                 **BY THE COURT:**

                                 _____
                                 Maritza Dominguez Braswell
                                 United States Magistrate Judge